## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN LEE STUCKEY,** | : | **CIVIL NO. 1:11-CV-436** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **D. BLESSING, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### REPORT AND RECOMMENDATION

I.    **Statement of Facts and of the Case**

This case, which comes before the Court for consideration of a motion for summary judgment, (Doc. 64), presents starkly divergent factual narratives punctuated by isolated instances of consensus.

The Plaintiff, Kevin Lee Stuckey, is a state prisoner and *pro se* litigant who has filed a civil complaint, which he later amended, against various Correctional Defendants at the Snyder County prison arising out of a July 2010 incident in which Stuckey asserts that he was assaulted by a number of correctional staff.  (Docs. 1 and 35)  With respect to this incident, Stuckey and the Defendants agree on a few salient facts.  (Compare Doc. 64-1through 11 with Doc. 74.)  They agree that on July 26, 2010, Stuckey was housed in the Snyder County Prison, and that upon this return from a court appearance, Stuckey was directed by prison staff to submit to a strip search

before he was returned to his cell.  (Id.)  The parties also agree that Stuckey initially

protested this order, and asked to speak to a correctional supervisor. (Id.)

　From this point, however, the competing factual narratives of Stuckey and the

Correctional Defendants stand in stark contrast to one another.  For his part, Stuckey

describes a violent and profanity laced response to his request to speak with the prison

shift supervisor, one in which he is subjected to racial epithets, assaulted by staff,

strangled into unconsciousness, and beaten without justification and without any

resistence on his part.  (Doc. 74, ¶¶1-21)   Stuckey specifically identifies five

correctional staff who he says participated in this July 26, 2010 assault–Defendants

Blessing, Kline, Royer, Griffith and Herr–and details the acts which he alleged they

committed upon him in an affidavit submitted to this Court. (Id.)

These five Correctional Defendants, in turn, describe this encounter in starkly

different terms, reciting an incident in which the Plaintiff, a truculent inmate, refused

to comply with staff instructions and became physically violent , assaulting staff when

they endeavored to compel his compliance with prison rules.  (Doc. 64-1 through 11)

In response to what they characterize as an unprovoked inmate assault on staff, the

Correctional Defendants then describe a measured and appropriate use of discrete

physical force. (Id.)

While the parties present contrasting and irreconcilable accounts of this incident, there are some additional matters upon which they seem to agree. First, all parties agree that two of the Defendants named in Stuckey's complaint, Warden Rush and Deputy Warden Bennett, are not alleged to have participated in this incident, and appear to have been included in Stuckey's complaint solely in their supervisory capacities. (Doc. 38, 64, 74, 76)  Furthermore, the parties agree that, following this July 26, 2010, incident Stuckey was charged in state court with assault, and entered a no-contest plea to this state assault charge.  (Id.)  Yet, even while the parties agree about the outcome of these state criminal proceedings, they dispute the legal significance of this no-contest plea in Stuckey's current civil lawsuit.

These starkly drawn legal and factual disputes are now presented to the Court in the context of the Defendants' motion for summary judgment, which seeks dismissal of all claims lodged by Stuckey against all parties. (Doc. 64)  This motion has been fully briefed by the parties, (Docs. 64-66, 73-75, and 76), and is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion for summary judgment be granted, in part, and denied, in part.

## II.  Discussion

### A.  Rule 56–The Legal Standard.

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv. Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see</u> <u>also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual

disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion

cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).  Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion. This principle applies with particular force to factual disputes which relate to matters of motive or intent.  In this regard, it is well-settled that:  "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)."  Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

## B.    **Constitutional Standards Governing Eighth Amendment Claims.**

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment excessive force claims, since the gravamen of Stuckey's complaint is that prison officials violated his rights under the

Eighth Amendment to the United States Constitution through their use of excessive force against him on July 26, 2010.  Eighth Amendment excessive force claims entail a showing of some subjective intent to injure.  In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Since the keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)–excessive force claims often turn on factual disputes which cannot be resolved as a matter of law.  As the United States Court of Appeals for the Third Circuit has aptly observed:

> [T]he Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. See Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, the central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322, 106 S.Ct. 1078; see also Sampley v.

Ruettgers, 704 F.2d 491, 495 (10th Cir.1983) (holding that wantonness exists when a prison guard intends to harm an inmate).

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

Consistent with this fact-bound approach to litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that

prison officials acted 'maliciously and sadistically to cause harm.'" <u>Fuentes v.</u>
<u>Wagner</u>, 206 F.3d 335, 346 (3d Cir. 2000).

## C.   Stuckey's No-Contest Plea to State Assault Charges Does Not Preclude Him From Pursuing an Excessive Force Claim

In their summary judgment motion the Defendants first assert that Stuckey's no-contest plea on related assault charges in state court as a matter of *res judicata* now precludes the Plaintiff as a matter of law from maintaining an Eighth Amendment excessive force claim against correctional officers at the Snyder County Prison.

This contention merits only brief consideration. The United States Court of Appeals for the Third Circuit has examined this precise issue in the context of the Supreme Court's rule in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), which forbids civil rights plaintiffs from bringing civil lawsuits against government officials which would necessarily imply that a prior state conviction was invalid.   Considering the application of this doctrine to an inmate excessive force claim made by a prisoner, like Stuckey, who was previously convicted of assaulting the correctional staff that allegedly used excessive force against him, the court of appeals held that the prior assault conviction is not an absolute legal  bar to an excessive force claim, stating:

> It is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest. <u>See</u> <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145–146 (3d. Cir.1997). In <u>Nelson</u>, the plaintiff had been convicted in state court of resisting arrest. Under Pennsylvania law, to convict the plaintiff, the jury

had to find that the officer involved "was justified in using 'substantial force.' " <u>Nelson</u>, 109 F.3d at 145. In reversing the district court's grant of summary judgment, we determined that "the fact that [the defendant] was justified in using 'substantial force' to arrest Nelson does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively unreasonable." <u>Id.</u> . . . . Similarly, [a prisoner-plaintiff's] convictions for resisting arrest and assaulting officers would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions. We are not suggesting that[a prisoner-plaintiff] will be able to recover damages, only that the rationale of <u>Heck</u> does not present an absolute bar to his claim. In order to succeed on his excessive force claim, [the prisoner-plaintiff] must still show that the officers' actions were unreasonable in light of the circumstances . . . . <u>See</u> <u>Kopec v. Tate</u>, 361 F.3d 772, 776–77 (3d Cir.2004).

<u>Lora-Pena v. F.B.I.</u>, 529 F.3d 503, 506 (3d Cir. 2008). <u>See, e.g.</u>, <u>Garrison v. Porch</u>, 376 F.App'x 274 (3d Cir. 2009); <u>Nelson v. Jashurek</u>, 109 F.3d 142 (3d Cir. 1997).

Given this settled caselaw, the Defendants simply may not maintain that Stuckey's prior conviction on state assault charges bars him from pursuing this excessive force claim since it is conceivable that a law enforcement officer, acting within the scope of his official duties, may use force that is excessive in effectuating a lawful arrest. <u>See</u> <u>Nelson v. Jashurek</u>, 109 F.3d 142, 145–146 (3d Cir.1997). Nonetheless to prevail on such a claim, Stuckey must still meet an exacting threshold. "In order to succeed on his excessive force claim, [the prisoner-plaintiff] must still show that the officers' actions were unreasonable in light of the circumstances . . . .

See Kopec v. Tate, 361 F.3d 772, 776–77 (3d Cir.2004)."Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008).

### D.   Factual Disputes Preclude Summary Judgment in Favor of Defendants Blessing, Kline, Royer, Griffith and Herr

Furthermore, we find that genuine disputes of material fact preclude summary judgment in favor of the Defendant correctional officers who allegedly encountered Stuckey on July 26, 2010–Defendants Blessing, Kline, Royer, Griffith and Herr. Simply put, as to these Defendants, the record is replete with sharply drawn disputes relating to material facts concerning the nature of the encounter between Stuckey and the officers; the degree of force employed in the encounter; the identity of the aggressors in the encounter; and the subjective motivations of the officers as they employed force against Stuckey.  While Stuckey ultimately must carry the burden of proof on these factual issues, and must demonstrate that the officers did not use force in a good-faith effort to maintain or restore discipline, but rather applied it maliciously and sadistically to cause harm, Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), in this case that determination is a factual one, which cannot be resolved on summary judgment but rather must await trial. See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).

### E.    The Supervisory Defendants–Defendants Rush and Bennett–Should be Dismissed From This Lawsuit

While disputed factual issues preclude summary judgment as to the Correctional Defendants who were directly involved in this confrontation with Stuckey, the two Supervisory Defendants named in this complaint, Warden Rush and Deputy Warden Bennett, stand in a different legal footing.

The principles which govern supervisory liability in civil rights cases are clearly defined.  At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or

of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d
1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:
>
> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. . .
> . <u>See</u> <u>Monell v. New York City Dept. of Social Servs</u>*.,* 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v.
> Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); <u>Robertson v.
> Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty, of
> the subagents or servants or other persons properly employed by or under
> him, in the discharge of his official duties"). Because vicarious liability
> is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that
> each Government-official defendant, through the official's own
> individual actions, has violated the Constitution

<u>Ashcroft v. Iqbal</u>,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of

evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff

may not maintain an action against supervisors based upon the misdeeds of their

subordinates.  <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa.

Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004).

Rather, "[p]ersonal involvement must be alleged and is only present where the

supervisor directed the actions of supervisees or actually knew of the actions and

-15-

acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)."

Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

In this case, Stuckey has listed Warden Rush and Deputy Warden Bennett in his complaint as Defendants, but the complaint contains no factual averments regarding either supervisory official besides a reference to their supervisory status.   Rather, Stuckey merely listed these individuals in the caption of the complaint, without setting forth any basis for a claim against them in the body of this pleading, a style of pleading which is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these Defendants.   Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case).   Therefore, these individual Defendants should be dismissed from this case.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motion for Summary Judgment (Doc. 64), be GRANTED in part, and DENIED in part, as follows:

1.   The District Court should GRANT summary judgment in favor of Defendants Rush and Bennett; but

2.   DENY summary judgment in favor of Defendants Blessing, Kline, Royer, Griffith and Herr.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 26th day of April 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge